UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-32-RJC

| | |
|---|---|
| DAMIEN DERALE WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MECKLENBURG COUNTY JAIL; ) | |
| FNU YOUNGBLOOD, Captain, ) | |
| Mecklenburg County Jail; FNU YOUNG, ) | |
| Captain, Mecklenburg County Jail; and ) | |
| FNU McELVEA, Deputy Officer, ) | |
| Mecklenburg County Jail, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, (Doc. No. 14).

## I. BACKGROUND

At all times relevant to this action, Plaintiff was a prisoner incarcerated at the Mecklenburg County Jail. Plaintiff filed this action on January 20, 2011, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First Amendment right to the free exercise of his religion, Islam.

Plaintiff alleges in his Complaint that his constitutional rights have been violated by the Mecklenburg County Jail and by two Captains in the Jail and one Deputy Officer. Plaintiff alleges three specific incidents in his Complaint:

1. "On the day of 12/18/09 I and a few other Muslims made a request to the residing Pod supervisor (Deputy officer CiaCia) to have (Jumu'a) prayer. Deputy Officer CiaCia revealed a memorandum that was written and effective on (January 3rd of 2007) explaining Muslim Friday services was allowed in the pods between 1400

>    pm – 1430 pm the incorrect time."
>
> 2. "On August 27th of 2010 I and another Muslim made a request to the pod supervisor Officer McElvae about being allowed to have Jumu'a prayer service. He replied the memo policy stated 1400 pm – 1430 pm was the Jumu'a service time. I corrected him with the correct time (1:25 pm) by showing him a Islamic prayer time schedule that I received from the Chaplain staff. He refused to acknowledge the information I given him and I was deprived [] of my right to have Jumu'a prayer service."
>
> 3. "September 23rd of 2010 I and another Muslim (Ishmal Castle) were making our (Isha) prayer together when Cpt. Young interrupted us intentionally with deliberate indifference. Cpt. Young said her reason for this interruption was because we didn't have our arm bands on our wrist[s]. Our arm bands were in sight but not on our wrists and this did not [sic] constitute an interruption of our (Isha) prayer."

(Doc. No. 1 at 3). In his prayer for relief, Plaintiff requests compensation "as a result of religious discrimination prohibiting me from practicing my religion properly. This violation led to mental and emotional distress which caused an inconvenience due to their prejudicial judgments." (Id. at 4). Plaintiff requests compensatory damages of $15,000 and punitive damages of $35,000. (Id.)

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). In order to survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has

stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949).

**III.     ANALYSIS**

Plaintiff alleges that his First Amendment right to express his religion was violated by the alleged conduct of prison officials on December 18, 2009, August 27, 2010, and September 23, 2010. Although Plaintiff alleges only a violation of his First Amendment rights, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") also applies to inmate claims of religious discrimination. See 42 U.S.C. § 2000cc et seq. RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise. Lovelace v. Lee, 472 F.3d 174, 198 (4th Cir. 2006). Section 3 of RLUIPA provides that a state shall not impose a substantial burden on the religious exercise of a person confined in one of its institutions, even if it results from a rule of general applicability, unless it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA requires the inmate to bear the burden of persuasion concerning the substantial burden element. Id. § 2000cc-2(b). If the inmate can meet this requirement, then the burden shifts to the government to show that such a denial furthers a compelling state interest in the least restrictive means. See id. The Supreme Court has noted that Congress "anticipated that courts would apply [RLUIPA's] standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline . . . .'" Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (quoting S. Rep. No. 103-111, at 10 (1993)).

In support of their motion to dismiss, Defendants note the following regarding Islamic

3

prayers and the Court takes judicial notice of the following:[1]  Muslims observe five formal prayers each day.  (Doc. No. 15 at 3; Doc. Nos. 15-1; 15-2).  These are individual prayers spaced throughout the day and are before dawn, noon, afternoon, sunset, and evening.  The precise timing of the prayers often varies by a few minutes each day and varies by location.  In addition to the five individual daily prayers, Muslims have a congregational prayer every Friday, known as the Jumu'ah.  The Jumu'ah is a congregational prayer that requires two or more Muslims to pray together.  The Jumu'ah prayer is on Fridays between the Dhuhr (noon prayer) and the Asr (afternoon prayer).  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 344 (1987) ("Jumu'ah is commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer.").

Here, Plaintiff acknowledges in his Complaint that the Mecklenburg County Jail allows for the Jumu'ah prayer to occur on Friday afternoons between 2:00 p.m. and 2:30 p.m.  Allowing Jumu'ah prayers between 2:00 and 2:30 p.m. on Friday afternoon appears to be the correct time period for the Jumu'ah prayers.  As the Supreme Court noted in O'Lone, the Jumu'ah prayer is to be held after the sun reaches its zenith (i.e., around noon or 1 p.m.) and before the afternoon prayer.  See O'Lone, 482 U.S. at 344.  The time period from 2:00 p.m. to 2:30 p.m. fits within that time frame.

Plaintiff alleges, however, that on August 27, 2010, the correct time for the Jumu'ah prayer was 1:25 p.m.  However, as set forth above, there is does not appear to be a set time for the Jumu'ah prayer.  Instead, it is to occur during a period of time.  Further, Defendants aver,

---

[1] On a Rule 12(b)(6) motion to dismiss, courts may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

4

and the Court takes judicial notice of the fact, that according to the Islamic prayer schedule for Charlotte, North Carolina, on August 27, 2010, 1:25 p.m. was the time for the Dhuhr, or noon, prayer. See (Doc. No. 15-1). Therefore, on August 27, 2010, the Jumu'ah prayer should have been held sometime between 1:25 p.m. (the Dhuhr prayer) and 5:05 p.m. (the Asr prayer). The fact that the Mecklenburg County Jail allowed for Jumu'ah prayer services between 2:00 and 2:30 p.m. on that date appears to be a correct time for such prayers.

Plaintiff also contends that a "deliberate indifference" to his practice of religion occurred on September 23, 2010, when Captain Young interrupted a prayer. The interruption of Plaintiff's prayer does not rise to the level of a constitutional violation. Both the Constitution and RLUIPA prohibit a "substantial burden" on the free exercise of religion. A one-time interruption of an inmate's prayer on a single day does not constitute a substantial burden on Plaintiff's right to exercise his religion.

In sum, Plaintiff fails to state a claim for violation of his right to exercise his religion under either the Constitution or RLUIPA.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss, (Doc. No. 14), is **GRANTED**, and this action is dismissed with prejudice.

Signed: March 2, 2012

Robert J. Conrad, Jr.
Chief United States District Judge

5